FILED

2010 Sep-30  AM 11:30
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **JAMES ALAN HAWKINS,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| **vs.** | ) | Civil Action Number |
| | ) | **2:10-cv-50-AKK** |
| **MICHAEL J. ASTRUE,** | ) | |
| **COMMISSIONER OF SOCIAL** | ) | |
| **SECURITY** | ) | |
| **ADMINISTRATION,** | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Plaintiff James Hawkins ("Plaintiff") brings this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA").  This Court finds that the Administrative Law Judge's ("ALJ") decision - which has become the decision of the Commissioner - is not supported by substantial evidence.  Therefore, for the reasons elaborated herein, the Court will **REMAND** and **REVERSE** the decision denying benefits.

### I. Procedural History

Plaintiff filed his application for a period of disability and disability

insurance benefits on July 24, 2006, alleging a disability onset date of April 14, 2006.  (R. 52, 92-97).  After the denial of his application, (R. 54), Plaintiff requested a hearing before an ALJ, (R. 61), which was held on August 21, 2008, in Birmingham, Alabama.  (R. 16-51).  On September 30, 2008, the ALJ denied the claim, (R. 7-15), which became the final decision of the Commissioner of the SSA when the Appeals Council refused to grant review, and, therefore, a proper subject of this court's review.  (R. 1-3).  Having timely pursued and exhausted his administrative remedies, Plaintiff filed this action for judicial review pursuant to section 1631 of the Social Security Act, 42 U.S.C. § 1383(c)(3).

At the time of the hearing, Plaintiff was 43 years old with a high school education.  (R. 14).  Plaintiff alleges that he has not engaged in substantial gainful activity since April 14, 2006, the date of his alleged onset of disability.  (R. 120). His past relevant work was as a construction welder.  *Id*.  Plaintiff's disability report alleges he suffers from pain as a result of back and neck injuries, (protrusions of the discs at C3-4 and C4-5, and C6-7 disc herniations-degenerative disc disease in cervical and lumbar herniations), that occurred when he slipped and fell on a roof, and "grabbed a door with his left arm" to keep from falling. (R. 119, 229) .

## II.  Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards.  *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'"  *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence."  *See id*.  (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Martin*, 849 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted).  If supported by substantial evidence, the Court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against the Commissioner's findings.

*See Martin*, 894 F.2d at 1529.  While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that the review "does not yield automatic affirmance."  *Lamb*, 847 F.2d at 701.

### III.  Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must be disabled as that term is defined by the Social Security Act ("The Act"), i.e., "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairments which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

Determination of disability under The Act requires a five step analysis. 20 C.F.R. § 404.1520(a)-(f).  The Commissioner must determine in sequence:

(1)     whether the claimant is currently employed;

(2)     whether the claimant has a severe impairment;

(3)     whether his impairment meets or equals one listed by the Secretary;

(4)     whether the claimant can perform his past work; and

(5)     whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).  "Once the claimant has satisfied Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment.  If the claimant does not have a listed impairment but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job."  *Pope,* 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995).  The Commissioner further bears the burden of showing that such work exists in the national economy in significant numbers.  *Id*.

Lastly, where, as here, Plaintiff alleges disability because of pain, he must meet certain criteria.  In this circuit, "a three part 'pain standard' [is applied] when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms."  *Holt v. Barnhart*, 921 F.2d 1221, 1223 (11th Cir. 1991).

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Id*.  Medical evidence of pain itself, or of its intensity, is not required:

> While both the regulations and the *Hand* standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, <u>neither requires objective proof of the pain itself.</u>  Thus under both the regulations and the first (objectively identifiable condition) and third (reasonably expected to cause pain alleged) parts of the *Hand* standard <u>a claimant who can show that his condition could reasonably be expected to give rise to the pain he alleges has established a claim of disability and is not required to produce additional, objective proof of the pain itself.</u>  *See* 20 CFR §§ 404.1529 and 416.929; *Hale* at 1011.

*Elam v. R.R. Ret. Bd.*, 921 F.2d 1210, 1215 (11th Cir. 1991) (parenthetical information omitted) (emphasis added).  Moreover, "[a] claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." *Holt*, 921 F.2d at 1223.  Therefore, if a claimant testifies to disabling pain and satisfies the three part pain standard, he must be found disabled unless that testimony is properly discredited.

When the Secretary fails to credit a claimant's pain testimony, he must articulate reasons for that decision:

> It is established in this circuit that if the Secretary fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the Secretary, as a matter of law, has accepted that testimony as true.  Implicit in this rule is the requirement that such articulation of reasons by the Secretary be supported by substantial evidence.

*Hale v. Bowen*, 831 F.2d 1007, 1012 (11th Cir. 1987).  Therefore, if the ALJ either fails to articulate reasons for refusing to credit the plaintiff's pain testimony, or if the ALJ's reasons are not supported by substantial evidence, the pain testimony of

the plaintiff must be accepted as true and a finding of disability is warranted.  *Id*.

## IV.  The ALJ's Decision

Initially, the ALJ determined that Plaintiff's medically determinable physical impairments of degenerative disc disease of the cervical spine at C3-4, C4-5, and C6-7, and of the lumbar spine at L4-5, met Steps One and Two of the five step analysis.  (R. 11).  However, later in his opinion, the ALJ determined Plaintiff's "lumbar issues to be none [sic] severe impairments."  (R. 12).  In Step Three, the ALJ found that Plaintiff's physical impairments neither met nor equaled the requirements for any listed impairment.  *Id*.

In Step Four, the ALJ determined that Plaintiff had the residual functional capacity to perform light work with a sit/stand option, including, (1) frequent lifting of ten pounds, (2) occasional lifting of twenty pounds, climbing of ramps/stairs, and balancing, stooping, kneeling, crouching, crawling, and (3) unlimited pushing and pulling.  (R. 11).  However, the ALJ determined that Plaintiff could not, (1) climb ladders/ropes/scaffolds, and (2) have concentrated exposure to extreme cold/wetness/humidity, or hazards.  *Id*.  Further, the ALJ held that the Plaintiff had no visual, communicative, or manipulative limitations, *id*., but that he could not perform his past relevant work as a construction welder, which the vocational expert classified as medium in exertional level.  (R. 13-14)

Lastly, in Step 5, the ALJ considered the Plaintiff's age, education, work experience, residual functioning capacity, and impairments, and determined that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.  (R. 14).  Based on the foregoing, the ALJ determined that Plaintiff is not disabled.  (R. 14-15).

## V.  Analysis

A.  <u>The ALJ's Decision to Assign "little weight" to Dr. Kendrick's Opinion Is Not Supported By Substantial Evidence</u>.

Plaintiff argues that the "ALJ committed reversible error by failing to accord proper weight to the opinions of two of his treating pain management physicians, Dr. Michael Scott Kendrick and Dr. David W. Cosgrove."  Doc. 8 at 10.  "The testimony of a treating physician must ordinarily be given substantial or considerable weight unless good cause is shown to the contrary."  *McGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986).  In addition, the Commissioner "must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error."  *McGregor*, 786 F.2d at 1053 (citation omitted).  If the Commissioner ignores or fails to properly refute a treating physician's testimony, as a matter of law that testimony must be accepted as true.  *Id*.  The Commissioner's reasons for refusing to credit a claimant's treating physician must be supported by substantial evidence.  *Id*. at

1054.

The ALJ provided the following explanation regarding the weight given to

Plaintiff's treating physicians:

> Any yet, as noted above, the objective evidence namely the MRI of the
> spine, referred to above, showed "no evidence of significance" along
> with a minor disc buldge [sic]. As for the opinion evidence, I assign
> significant evidentiary weight to the medical opinions and findings of
> Drs. Whitman and Langford as they are consistent with the medical
> record as a whole. It is important to note that while the claimant
> alleges pain at a level preclusive of sustained work activity at any
> exertional level, these allegations are not supported by the evidence of
> record in this case, medical or otherwise. I find that the treating
> records reveal well managed pain. For the above reasons, I assign
> little weight to the doctors' opinion of on going pain of the claimant;
> Drs. Kendrick and Cosgrove. In a word, there [sic] findings are not
> supported by the objective medical evidence, but instead are based [on
> Plaintiff's] complaints, but they [sic] conclusions are also are [sic]
> inconsistent with the claimant's self-reporting during his treatments.

(R. 13).

Based on the court's review of the record, the ALJ's decision to accord

"significant evidentiary weight" to Drs. Whitman and Langford's opinions because

they are "consistent with the medical record as a whole," and "little weight" to Dr.

Kendrick's opinion, is not supported by substantial evidence, and, in fact, is

inconsistent since Dr. Kendrick's findings are consistent with Drs. Langford and

Whitman.

1.      *Plaintiff's Medical Treatment History*

The record contains the following medical evidence.  Plaintiff received an anterior cervical diskectomy and fusion at C5-6 on August 7, 1995, (R. 163), and a lumbar microdiskectomy for a ruptured disc at L4-5 on February 15, 2001.  (R. 196).  Subsequently, Plaintiff sought treatment from various physicians beginning initially with the Birmingham Neurosurgery and Spine Group, PC ("BNSG").  (R. 218-34).

On August 19, 2004, Dr. E. Carter Morris of BNSG evaluated Plaintiff and observed that, "[e]ver since [Plaintiff's] low back disc surgery, he has had constant back pain that he has struggled with and some days it is all he can do to go to work and come home and get off his feet and put ice on his back.  More recently he had increase in pain and also an increase in numbness in his left leg."  (R. 233).  Dr. Morris diagnosed Plaintiff as having "increasing back pain and numbness in his legs."  (R. 232).[1]

Plaintiff next saw Dr. Kelli Grinder, who evaluated his shoulder pain on May 15, 2006, and June 15, 2006.  (R. 202-203).  Dr. Grinder ordered and Plaintiff received on May 16, 2006, a cervical and shoulder MRI.  The cervical MRI revealed the following: (1) prominent lateralizing disc on the left below the level of

---

[1] There are no treatment records from August 2004 through May 2006.

the fusion at C6-7, (2) mild spinal stenosis at C4-5 due to broad based osteophyte asymmetric to the left, (3) prominent osteophyte lateralizing to the right at C3-4, (4) cervical cord atrophy in the mid cervical region, and (5) abnormal signal arising from the cord at the level of the fusion which may represent a small area of syrinx[2] formation or related to cord contusion.  (R. 208-209).  The shoulder MRI results determined Plaintiff had "some mild AC joint arthritic changes but otherwise no significant abnormality is seen."  (R. 207).  Dr. Grinder prescribed Plaintiff Darvocet to be used as needed.   (R. 203).

After Dr. Grinder, Plaintiff returned to BNSG, where initially he saw Dr. Morris on June 21, 2006.  (R. 229).  Dr. Morris observed that Plaintiff complained of severe neck pain which is "aggravated by activity," and that Plaintiff's MRI revealed a "new herniated disc osteophyte complex at C6-7 on the left hand side." *Id*.  Next, Dr. Keith Langford, also with BNSG, evaluated Plaintiff on June 27, 2006, and noted that Plaintiff's chief complaint was "low back pain and left leg pain but with a continuing problem with his neck."  (R. 227).  Dr. Langford noted that Plaintiff stated that, (1) his lumbar spine was his "major problem," and (2) "following that surgery his neck was certainly much better but that he continued to

---

[2] A syrinx is a fluid-filled cavity in the spinal cord, that can be congenital or due to injuries or tumors. The Merck Manual 1481(Michael H. Beers, M.D. & Robert Berkow, M.D. eds., 1999).

[have] low back pain." *Id*.  Plaintiff's treatment included epidural blocks and

Lortab[3] twice daily.  *Id*.

On June 29, 2006, Dr. Langford again evaluated Plaintiff, who complained of

"low back pain" and "continuing pain in the left leg."  (R. 222).  Dr. Langford

observed, "I note an [sic] MRI scan report that significant changes in the spinal cord

were reported and that there is said to be a signal in the cord itself which could be a

syrinx and represent some trauma to the spinal cord associated with his cervical disc

disease and cord and spine stenosis and the radiologist reports atrophy of the cord.

These seem to be very important in view of his complaints."  *Id*.  Further, Dr.

Langford commented that, "[i]n general the patient appears to be very

straightforward but he is very concerned and focused on his need to obtain disability

because of his understandable belief that the pain prevents him from earning a

living.  He presents himself in a credible fashion and it was not possible to discern

any deception in his testing responses."  *Id*. (emphasis added).  Significantly, Dr.

Langford concluded that, "[t]he patient has a believable story of significant pain in

the neck and in the lumbar spine area consistent with the pathology at these two

levels."  (R. 220) (emphasis added).  Finally, Dr. Langford opined in his June 29

_____

[3] Lortab (Vicodin) is a narcotic pain reliever indicated to relieve moderate to moderately severe pain.  PHYSICIAN'S DESK REFERENCE 560 (64th ed. 2010).

treatment notes and in a subsequent July 27, 2006, letter that, "[Plaintiff] is only capable of light work in terms of lifting of an occasional twenty-pounds lift and frequent ten pounds with some restriction of the left arm movement with push and pull to frequent.  Going up and down stairs would only be possible occasionally and the same is true of crouching and crawling.  The amount of time that he can spend on his feet in an eight hour day is no greater than four hours."  (R. 218, 220).

The next physician Plaintiff saw was Dr. Michael Kendrick of Pain South, as a result of a referral from Dr. Grinder.  Ultimately, Dr. Kendrick evaluated and treated Plaintiff more than any other treating physician.  On July 17, 2006, Dr. Kendrick's treatment notes revealed the following:

> [Plaintiff] presents with a history of lumbago radiating to the left lower extremity, cervicalgia, and left upper extremity pain.
>
> * * * *
>
> PRESENT SYMPTOMS: Mr. Hawkins states his pain is exacerbated by standing or riding for over one hour and by performing any physical activity at all.  He states that any type of light work "leaves me hurting for days."  His symptoms are improved by sitting or moving at a slow pace when the pain starts.  He states he tries to walk a half to one mile per day.  He has had back pain for four years and neck and shoulder pain since the fall in April of this year.  He states the pain never stops in his low back and it is relieved slightly by his medications.  He describes pain as constant, numb, and sore in the low back, and left leg. He says that pain in his neck, shoulder, and left upper extremity is intermittent, sharp stabbing, throbbing, tingling, and stiff.  <u>Pain somagram shows pain to the entire left lower extremity, left upper extremity, and spine</u>.  He reports his pain at its worst, a 10, at its least, a 7, on average, a 9, and at the present time, a 9 out of 10.

(R. 253) (emphasis added).  Dr. Kendrick noted further that Plaintiff took Lortab

three times per day for pain, but "states he needs more to relieve the pain."  *Id*.  Dr.

Kendrick diagnosed Plaintiff with, (1) postoperative radiculitis, cervical, (2)

[herniation], cervical, and (3) postoperative radiculitis, lumbar.  (R. 254).

On July 19, 2006, Dr. Kendrick ordered a MRI of Plaintiff's lumbar spine,

which revealed "[l]eft sided post operative changes L4-5.  Persistent L4-5 disc bulge

but no recurrent [herniated disc] identified.  No new finding since 2004."  (R. 213).

On August 17, 2006, Plaintiff presented to Dr. Kendrick complaining of

"chronic neck pain, left upper extremity pain, low back pain, and pain in the lower

extremity."  (R. 252).  Plaintiff stated that he has had cervical and lumbar epidurals

in the past "with benefit," and requested a repeat of the procedures.  *Id*.  On August

28, 2006, Dr. Kendrick administered to Plaintiff lumbar and cervical steroid

epidurals, indicated due to the following diagnoses: (1) degenerative disc disease,

(2) lumbago, (3) intermittent sciatica, and (4) cervicalgia.  (R. 250-51).

While Plaintiff was receiving treatment from Dr. Kendrick, at Dr. Grinder's

direction, on September 26, 2006, Dr. Marcus Whitman "completed in consultation"

a Physical Residual Functional Capacity Assessment, (R. 256-63), and noted the

following exertional limitations: (1) occasionally lift twenty pounds, (2) frequently

lift ten pounds, (3) stand or walk a total of six hours in an eight hour day, (4) sit for

six hours in an eight hour work day, and (5) unlimited push and/or pull.  (R. 256-261).  To support his conclusions, Dr. Whitman cited exam notes from Dr. Langford's June 29, 2006, evaluation, which noted, among other things, (1) Plaintiff's August 24, 2004, MRI results indicating  marked stenosis of the formina on both sides, (2) some paraspinal muscle spasm, (3) strength of 5/5 right arm and leg, (4) grip of left hand of 4/5, and (5) weakness in the left elbow of 4/5.  *Id*. Additionally, Plaintiff's August 25, 2006, MRI was noted, which included the following findings:  1) left side post [operative] changes L4-5 persistent disc bulges, and 2) MRI [cervical] spine -- prominent disc on the left below C6-7, mild stenosis C4-5, prominent osteophyte to the right C3-4, cervical cord atrophy in the mid cervical region.  (R. 257-58).  Lastly, Dr. Whitman commented, "[t]reating specialist Dr. Langford states that the Claimant is capable of only light level work lifting occasional weight of 20 pounds and frequent weight of 10 the [sic] he can stand 4 hours in an 8 hour day.  He can walk stair[s] occasionally and can also occasionally crouch and crawl.  This opion [sic] is consider[ed] and given significant weight." (R. 262).

On October 24, 2006, Dr. Kendrick completed a Physical Capacities Evaluation of Plaintiff and noted that he could, (1) lift or carry twenty pounds occasionally to ten pounds frequently, (2) in an eight hour work day, sit four hours

and stand two hours, (3) frequently use fine manipulation, (4) occasionally push and pull, (5) use gross manipulation and reach, (6) operate a motor vehicle, and (7) work around hazardous machinery, dust, allergens, or fumes.  (R. 267).  However, Dr. Kendrick noted that Plaintiff could never climb stairs or ladders, bend or stoop (bending downward and forward from the waist).  *Id*.  Dr. Kendrick completed also a Clinical Assessment of Pain on Plaintiff, which indicated the following: (1) pain is present to such an extent as to be distracting to adequate performance of daily activities or work, (2) physical activity greatly increased pain to such a degree as to cause distraction from tasks or total abandonment of tasks, (3) the prescribed medication has some side effects, but not to such a degree as to create serious problems in most instances, and (4) Plaintiff has an underlying medical condition consistent with the pain he experiences.  (R. 268-69).

Dr. Kendrick saw Plaintiff again on February 16, 2007, and May 17, 2007. (R. 295-97).  At each visit, Plaintiff complained of chronic neck and low back pain. During his February 16 visit, Plaintiff rated his pain as a 4/10, with 10 being the most severe.  (R. 296).  Dr. Kendrick scheduled Plaintiff for an epidural steroid treatment, which he received on February 22, 2007.  (R. 297).  Plaintiff's diagnosis remained unchanged.

Dr. Kendrick also evaluated Plaintiff on August 15, 2007, and noted that

Plaintiff described his pain as a 6/10 although it "averaged 5/10 in the last month."
(R. 308).  Dr. Kendrick subsequently gave Plaintiff epidural treatments on August
30, 2007, (R. 325), September 20, 2007, (R. 322), and October 11, 2007, (R. 319).
On November 13, 2007, Dr. Kendrick evaluated Plaintiff and noted that his low
back pain was an 8/10.  (R. 305).  Dr. Kendrick increased Plaintiff's Lortab dosage
from three to four times per day.  (R. 307).

On February 11, 2008, Dr. David Cosgrove[4] of Pain South evaluated Plaintiff
and recorded that his low back and neck pain were a 3/10, but had averaged 7/10 in
the last month.  (R. 302).  Dr. Cosgrove also noted that Plaintiff "has had great relief
of his pain with the increase of Lortab to [four times per day]."  (R. 302).  On May
8, 2008, Dr. Cosgrove evaluated Plaintiff and recorded that his pain was a 5/10, but
was a 6/10 during the last month.  (R. 298).  Dr. Cosgrove also administered to
Plaintiff cervical and lumbar epidural treatments on May 16, 2008, (R. 317), June
13, 2008, (R. 315), and July 25, 2008, (R. 313).  Lastly, on July 28, 2008, Dr.
Cosgrove completed a Clinical Assessment of Pain on Plaintiff and opined that, (1)
"pain is present and found to be intractable and virtually incapacitating to this
individual," (2) physical activity will cause an "increase of pain to such an extent

---

[4] Dr. Cosgrove notified Plaintiff that Dr. Kendrick was no longer a member of Pain
South.  (R. 304).

that bedrest and/or medication is necessary," and (3) the prescribed medicines will impact Plaintiff's ability to perform work such that he "will be totally restricted and thus unable to function at a productive level of work."  (R. 330-31).

2. *The ALJ's Analysis of Medical Evidence Is Not Supported By Substantial Evidence.*

The ALJ's decision to assign "significant evidentiary weight" to Drs. Langford and Whitman's opinions, but "little weight" to Dr. Kendrick's opinion, is not supported by substantial evidence.  First, unlike Dr. Kendrick, who treated Plaintiff over a period of sixteen months, Dr. Langford only evaluated Plaintiff twice.  However, his notes from the June 29, 2006, evaluation support Dr. Kendrick's findings and belie the ALJ's conclusion that Dr. Kendrick's findings are due "little weight."  Specifically, Dr. Langford opined that Plaintiff, (1) was credible regarding his story of significant pain that is consistent with his cervical and lumbar conditions, (2) could perform light work that involved occasional lifting and climbing stairs, and (3) could stand on his feet four hours in an eight hour day.  (R. 218, 220).  This assessment is consistent with Dr. Kendrick's.

As for Dr. Whitman, unlike Dr. Kendrick, it appears he never saw Plaintiff in person.  Instead, he adopted Dr. Langford's opinion regarding Plaintiff's physical abilities with minor changes.  (R. 257).  Significantly, his findings, like Dr. Langford's, also support Dr. Kendrick's.

Like Drs. Langford and Whitman, in October 2006, Dr. Kendrick, who treated Plaintiff significantly longer than the other treating physicians, determined that Plaintiff, (1) could perform light duty tasks similar to those described by Drs. Langford and Whitman, (2) experienced pain that would distract him from adequately performing activities, and (3) had a condition consistent with pain he experiences. (R. 268-69).  Because Dr. Kendrick treated Plaintiff more recently and for a longer period of time than Drs. Langford and Whitman, and his opinion of Plaintiff's physical capabilities is consistent with Drs. Langford and Whitman, the ALJ's decision to assign "little weight" to Dr. Kendrick's opinion is neither warranted nor supported by substantial evidence.  This error, however, does not require reversal of the ALJ's decision since Drs. Langford, Whitman, and Kendrick's opinions are consistent.

The ALJ's decision to assign "little weight" to Dr. Cosgrove's opinion is supported by substantial evidence.  Dr. Cosgrove found Plaintiff's pain to be "intractable and virtually incapacitating," and that activity would cause it to increase to warrant bed-rest and medication.  (R. 330).  This opinion is inconsistent with the record as a whole.  Therefore, the ALJ's decision to assign Dr. Cosgrove's opinion "little weight" is supported by substantial evidence.

B.      The ALJ Failed to Apply the Pain Standard and Articulate Reasons for
        Refusing to Credit Plaintiff's Pain Testimony

Reversal is warranted, however, because the ALJ's decision contains no indication that he applied the pain standard.  Further, the ALJ's only articulated reason for refusing to credit Plaintiff's pain testimony, that "the treating records reveal well managed pain," is not supported by substantial evidence.

First, the record supports a finding that Plaintiff suffers from considerable pain resulting from his conditions.  Dr. Langford, whose opinion the ALJ assigned "significant evidentiary weight," commented that Plaintiff "has a believable story of significant pain in the neck and in the lumbar spine consistent with the pathology at these two levels," and that Plaintiff "presented himself in a credible fashion and it was not possible to discern any deception in his testing responses."  (R. 220, 222) (emphasis added).  Likewise, Dr. Kendrick opined that Plaintiff has an "underlying condition consistent with the pain he experiences." (R. 268).  In fact, Plaintiff's pain is supported by objective evidence — specifically, a "pain somagram [that] shows pain to the entire left lower extremity, left upper extremity, and spine." (R. 253).  Therefore, Plaintiff's pain testimony is credible.

The record reveals also that Plaintiff's pain is not well managed. Dr. Kendrick's  most recent treatment notes state that he increased Plaintiff's Lortab therapy from three to four times per day.  (R. 307).  Further, from February 2007

through July 2008, Plaintiff received epidural steroid treatments at least seven times. (R. 297, 313, 315, 317, 319, 322, 325). Additionally, Plaintiff's testimony regarding his level of pain, which Drs. Langford and Kendrick found credible, establish also that it is not well-managed. Plaintiff rated his pain as a 4/10 only once from February 2007 through May 2008. (R. 296). During all other months, Plaintiff rated his pain as either 5, 6, 7, or 8. (R. 295, 298, 302, 305, 308). Lastly, the record is replete with Plaintiff's complaints of pain, and there are no suggestions from any treating physician that his complaints are not credible. To the contrary, Drs. Langford and Kendrick opined that Plaintiff's underlying conditions are consistent with his pain.

Because the ALJ's articulated reason for refusing to credit Plaintiff's pain testimony, i.e., that Plaintiff's pain is well managed, is not supported by substantial evidence, it follows, therefore, that Plaintiff's pain testimony is accepted as true. *Hale*, 831 F.2d at 1012. Moreover, Plaintiff's pain requires a finding that he is disabled. The vocational expert confirmed during the administrative hearing that if Plaintiff's pain was such that it was "distracting to adequate performance of daily activities or work," and that activities would "greatly increase pain to such a degree as to cause distraction from tasks or total abandonment of task," he would not be able to work "because his pace and persistence would be affected to the point that

he would not be working during the time he was distracted from pain, and he would also be absent from work more than would be accepted."  (R. 50-51).  Dr. Kendrick determined that Plaintiff's pain was present to the extent it would be "distracting to adequate performance," and that activity would cause "[g]reatly increased pain and to such a degree as to cause distraction from tasks or total abandonment of tasks." (R. 268).  Finally, Dr. Langford stated that Plaintiff suffered from "significant pain" that was "believable" and "consistent with the pathology."  (R. 220).

Because Plaintiff's pain testimony is supported by the medical evidence, and is accepted as true as a matter of law, he is disabled within the meaning of the Social Security Act, and is entitled to the benefits for which he applied.

## VI. Conclusion

Based on the foregoing, the court concludes that the ALJ's determination that Plaintiff is not disabled is not supported by substantial evidence, and proper legal standards were not applied in reaching this determination.  The Commissioner's final decision is, therefore, due to be **REVERSED** and **REMANDED.**  A separate order in accordance with the memorandum opinion will be entered.

Done the 30th day of September, 2010.

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE